until the next meeting nextl meeting, November 27, November 27, 21 7990 November 27, 21 7 9999 Thank you. Good morning, your Adam Mandelsberg of Perkins Coulee on behalf of the appellant. Timothy, ask you. Please. The court. Sandra Benjamin was the only non party eyewitness to defendants. Assault of Mister, ask you in his own home. She testified in court. And you ask. The court. To issue a court subpoena for her and send out the marshals and bring her in. If she was so important rather than just make a few phone calls. Judge Raycroft. We made extensive efforts to locate Miss Benjamin. What were those efforts? We for one attempted to contact her not only at the number that Mr ask you. Did you do anything but phone calls? Yes. In addition, we did a social media search. We tried to locate every single account holder with the name Sandra Benjamin in the United States. Why did you seek if this was so critical? Why didn't you do the obvious thing, which was to seek court intervention to producer? Judge Raycroft. This was a matter that was consistently discussed in meeting confers between council. This was on everyone's radar. We attempted to locate her through all the means available to us. You never asked the court to take action to producer. We did not ask the court in part, your honor, because we we believed that we had no reason to believe that she was within the jurisdiction of the court. So we attempted to locate her by a white pages search. We contacted every single frankly, this kind of thing comes up all the time in a district court. And the normal situation is if there's someone out there that you think you need and you're not being able to reach them through telephone, uh, you hire maybe a process server or an investigator, or you ask the court to use its offices saying this is a critical person. Uh, but that's not what you did. You relied on the telephone and, uh, uh, the well known, uh, usefulness of social media. Uh, yes, your honor, we did attempt to contact her through the wall. Did she have an account in social media when they were together? Did Sandra Benjamin have an account on some? Not, not to my client's knowledge. Uh, and again, this is a relationship that ended five years earlier while my jail, my, while my client, Mr. Askew, uh, was in jail. Um, and so, uh, for the charges at issue in this case, which were then dismissed in the interests of justice, I think critically on this point, Judge Rakoff, um, and Judge Pooler, um, the trial court assumed unavailability. The trial court's decision excluding the testimony was not based on any suggestion that, that, uh, that Ms. Benjamin was somehow available, uh, or that we had made insufficient efforts. No, he said she was unreliable. That's what he said. That, that's right. That's right, Judge Pooler. And we take issue with that, uh, what appears to be a factual finding because it's not predicated on any facts. Um, Ms. Benjamin, uh, was the girlfriend of Mr. Askew, and she was a live eyewitness to this assault by defendants that day. She saw and heard and, and, and, uh, everything that happened, and she testified to it one week after the fact. Go back. Um, she then testified under oath at a hearing a week after the incident, right? Yes, Your Honor, in the village court. And she was cross-examined vigorously? Yes, Your Honor. And so, and so at that, at that hearing, there was a live in, in-court hearing that was transcribed. Um, Ms. Benjamin testified that under cross-examination, that she said she was okay in response to the police officer's inquiry, um, how are you doing? She testified that it was Mr. Askew who opened the door to the officers who complied with their order. She testified that she was laying across the bed and that Mr. Askew was sitting in a chair at the time that the officers came. What's the standard of review? The standard of review, uh, for the evidentiary determination is abusive discretion, Your Honor. But to the extent that an inaccurate and incorrect legal determination was made here and then applied, we think that there is room for this court to clarify what's the appropriate standard, either under 804B1 or under 807. We would respectfully submit, Your Honor, that neither, that the correct standards were not applied in this case. And we think that judge, uh, that the magistrate judge's decision to exclude based on, uh, a notion that a district attorney questioning a witness in a criminal context can never be a predecessor in interest to defendant arresting officers in connection with that matter. We think that that's erroneous. Okay, I'm sorry. So can you just back up just a little bit and help me out? Um, I understand your argument to be that the Second Circuit should create new law on what a definition of a predecessor in interest is. Are you, is that correct? Yes, Your Honor. Okay, so are you asking us to adopt the Third Circuit's, um, standard or does it need to be modified? What your objection a moment ago seemed to, uh, suggest that you, uh, were concerned that the district court maybe was too broad and blunt. Do you have a more nuanced approach or would you just have us adopt the Third Circuit wholesale? What are you asking us to do? We, we think, Your Honor, that the Third Circuit standard enunciated in Lloyd, which was, which has subsequently been adopted by the Fourth, Sixth, and Tenth Circuits, we think it strikes the right balance in civil cases. And again, there's a reason we would submit that Congress decided that in civil cases, unlike criminal cases, you don't need identicality of parties. A predecessor in interest, we think guided by the advisory committee notes, um... Wait a minute, but we're not talking. So you want it in the civil case and you're asking us to not decide for criminal cases? Is that what you're asking us to do? Right, because the language in 804b1 of predecessor in interest only applies in civil cases. And so we think that, we think that that's instructive, that in civil cases like this one, a predecessor in interest, um, is someone who has the same, who has, uh, a like motive to cross-examine about the same matters as the present party and someone that had an adequate opportunity for such examination. I'm quoting from Lloyd, uh, the Third Circuit decision. Um, we think that that standard resonates, is consistent with the advisory committee notes, and is quite sensible. In this... Well, even, okay, let's assume that we agree, which we might or might not, but why is the prosecutor's motivation in a preliminary hearing, um, the same as a defendant police officer's motivation in a civil trial? Uh, a prosecutor's, um, interest may or may not be the same, but the fact is that here the prosecutor questioned on all of the same basis that defendants ended up trying to discredit Mr. Askew at trial and re- and suggest... So, so are you asking us to adopt a standard that would require a court to, after the fact, examine whether or not there was perfect lining up of potential questions? I mean, that just seems not particularly workable. Not, not perfect, Your Honor, and I think that this, this goes to, uh, the standard that was, that was discussed in Wright v. Kelly, which applies, uh, this predecessor in interest concept under 804B1 to prior testimony given under cross examination by the state when there's a suit later in connection with that same set of facts against the officers. And in that case, the court made clear, this is the Western District of New York in applying 804B1, that it's not about having the identical motive. It's about having a similar one. And in this case, the officers asked, they tried to pierce Ms. Benjamin's testimony on this notion, again, that didn't appear in the charging documents or in the charges at the time that Mr. Askew might have been engaged in domestic violence. Ms. Benjamin was questioned over and over again on were you, were you raised? Where were you sitting in the house? Did you flee the house? Or did Mr. Askew answer the door when the police officers came? Were you yelling? Were you screaming? Was Mr. Askew drunk? Was he acting irrationally? Did he spit on the police officers? All of these matters formed the basis for the defendant's testimony six years after the fact at trial. When they presented a very different version of these facts that was violently at odds with Ms. Benjamin's in-court testimony one week after the incident. Counsel, if this testimony was allowed in under 807, under the residual exception, we wouldn't have to face this predecessor and interest issue, isn't that correct? That's correct, Judge Poole. So we have alternative grounds. And there, we would just make sure that the testimony of Ms. Benjamin is trustworthy, which the district court said was unreliable, but didn't make a record as to what, bears on a material fact, obviously it is, and it is the most probative evidence addressing that fact and advances the interest of justice and gives adequate notice to the opposing party. So I don't know why it wouldn't fit under 807. I agree, Your Honor, and I believe we addressed that in our brief. I have no further questions. If there are no further questions, I'll reserve for rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the court, Ralph Piele from Drake Globe for the District Court. I just want to clarify something at the outset. Council claim that Miss Benjamin was the witness to an assault. Miss Benjamin's preliminary hearing testimony never. She never testified that any officer hit or kick or assaulted the plaintiff. It's completely absent from her prior testimony to show that the plaintiff and Miss Benjamin were simply watching TV. But we really know that wasn't the case either because there was a 911 call made and the plaintiff concedes that a 911 call was made. In that 911 call, the caller observed his contemporary aneous observations that the plaintiff was beating the crap out of Miss Benjamin. He observed someone being assaulted. He called it in. They just went inside the apartment. There were only two people there, and that's the plaintiff and Miss Benjamin. There was never an assault testified by Miss Benjamin by these officers against the plaintiff. Miss Benjamin said that they were minding their own business, and all of a sudden the police officers came into the house and there was blood all over and broken glass. That was her testimony, wasn't it? That's correct, and there was blood all over because Officer Yeomans was bit by the plaintiff's pit bull and required treatment at Mobile Medicine and then at a hospital. So it seems to me these are all factual issues that should have been put before the jury, not just the judge, no matter what the standard of review is. I would respectfully disagree, Your Honor, for several reasons. At the outset, it was the plaintiff's burden to show that Miss Benjamin was unavailable to testify at trial, and that's a standard that shows it's a relatively high standard of good faith, reasonable efforts. In this case... So this took place six years prior to the trial. So you would admit that you could lose track of someone in six years, correct? It's certainly possible, Your Honor, but at the case... And they had separated during the 58 days you spent in jail before this was dismissed in the interest of justice, correct? That's correct, Your Honor, but... And that was six years prior to the trial. The law does dictate that to prove unavailability, you have to show reasonable good faith efforts to procure attendance, and in this case, the extent of the plaintiff's efforts consisted of 11 months prior to trial sending a single message to two Facebook accounts, and then... I think it was more than a single message. And not per... It must have been a single message to Facebook, but there were other attempts to find her on social media, whatever that is. For the declaration that was submitted by counsel, which is in the record at ECF 139, the only efforts consisted of sending a single message to two Facebook accounts in March of 2020, and in March of 2020 calling six numbers that were found at random in the white pages. Plaintiff never... Well, they were not at random. They were her name. They called all the references to Sandra Benjamin. Isn't that correct? They... So it's not fair to They called those numbers. Apparently there was no answer, and plaintiff said, okay, well, we tried. I guess we can't reach her. Plaintiff never sought the court's intervention. Plaintiff never hired a process server to serve Ms. Benjamin at her last known address. Plaintiff never hired an investigator. Plaintiff never did any type of skip tracing. Maybe she... That would make... That would raise the standard well below what the language of the statute is to say you have to hire a process server or skip tracer or it doesn't say anything like that. You have to use reasonable efforts, and he claims he did. Reasonable efforts through service of process or other reasonable means, and in this case, those efforts were lacking. The case law does speak in terms of what is a reasonable effort. Well, seeking court's intervention is a reasonable effort. Hiring a process server is a reasonable effort. In the Kentucky case cited by the plaintiff, hiring an investigator is a reasonable effort. Exhausting efforts to locate a witness, those are reasonable efforts. None of that was done here. Rudimentary steps that could have been done. So we respectfully assert that the plaintiff did not satisfy that burden of showing that they engaged in reasonable efforts to actually procure the attendance of this particular witness. You said she never spoke about the assault. Why were you so anxious to keep it out of the trial? Because we don't have an opportunity to cross-examine her. She was cross-examined at the hearing a week after the incident, correct? Your Honor, she was... Someone who was very interested in proving probable cause, which is the same issue that the police officers had, right? If they had probable cause, there was no problem with the arrest. Your Honor, the preliminary hearing testimony reflected a single issue as to whether the officers were performing their investigation. Nothing further. That was the issue. It's a much narrower issue than was presented at the trial, so that, for example, the well- known tendency of battered women to decline to testify against those who have battered them was not inquired into because the district attorney would have no reason to inquire into that. But if it was presented at trial, it might well have been inquired into. That's exactly correct, Your Honor. And certainly the defendants in this case had an interest in developing her testimony through cross- examination. If she's going to testify that they were watching TV or she didn't observe something or did observe something, we're entitled to cross-examine. Well, where were you standing? What was your vantage point? What did you see? All that was in that hearing. It establishes that she was on the bed, he was in a chair. You'd want more than that, I suppose. Absolutely, Your Honor. And there would have to be because the district court here certainly did not abuse his discretion because, fine, if they want to claim they were watching television, how does that change the ultimate outcome in the case? There's no dispute. A 9-1-1 call was made reporting a domestic incident at the plaintiff's apartment. The officers had the right to be there and it was the plaintiff's actions when the officers arrived that ultimately gave rise to probable cause for the arrest. So if they wanted to put in that testimony to claim that they were watching TV, all right, well, the district court balanced that because there's a 9-1-1 call that says they weren't watching TV and she was being physically assaulted. So the district court did not allow in the 9-1-1 calls? That's correct, Your Honor. Well, if Sandra Benjamin's testimony was let in, I assume he would allow in the 9-1-1 calls as well. Absolutely. So they would have balanced each other out. Absolutely, Your Honor. Why would the government take a position to keep everything out? He decided to keep everything out because, in the district court's view, what is relevant is what happened when the officers arrived at the plaintiff's apartment and how the plaintiff responded to those officers. And even per Ms. Benjamin's testimony at the hearing, he was telling the officers to leave. He acknowledged he may have used profanity at them. A non-party, Luis Velasco, who was present, observed the plaintiff in a belligerent state and he observed the plaintiff and Ms. Benjamin, who was present, observing and yelling at each other. So certainly that biased view that the plaintiff sought to put forth through Ms. Benjamin's testimony is completely at odds with all the testimony. That's what the jury decides if it's at odds. That's why we have our system the way we do. This is what the judge said as a summary of his ruling on Ms. Benjamin's testimony. I don't think the residual exception is any healthier, nor do I regard that testimony as especially reliable in light of the circumstances which it's given as we discussed. That's not a real factual finding. I mean, what is the basis of saying it's not especially reliable? He was listening only to the police officers. Well, no, Your Honor. Under Rule 87, Ms. Benjamin's testimony did not have circumstantial guarantees of trustworthiness. 807 you're talking about? Yes, switching to 807. Right. Because, one, Ms. Benjamin was the girlfriend of the plaintiff. Two, Ms. Benjamin was also facing an obstruction charge. Three, per the 911 caller, she was reportedly the victim of domestic abuse, which she's testifying at. The plaintiff's insistence at this preliminary hearing, the judge said, it doesn't matter what the testimony is. I only have to meet this low threshold or make sure that low threshold is satisfied. She told the plaintiff, what you testify to and what Ms. Benjamin testifies to is irrelevant because I'm not here to find you guilty or not guilty. That certainly cut back and circumscribed the scope of any examination. So why would you object so strongly to allowing it in? Because we don't have the opportunity to object and it gives the plaintiff the opportunity to use that in an unfair manner to present evidence in a way that is not accurate and not consistent with any of the testimony.  advise us on what we're supposed to do with United I certainly think one reading of that case is that there is a pretty high burden of trustworthiness. Would you say that that is accurate? Or would you say that it's do we have a higher burden of trustworthiness that needs to be met in order to come under 807? Is that the government's position? Certainly. Absolutely. There has to be a high degree of trustworthiness to admit such testimony to avoid the risk of insincerity, faulty narration, to avoid the scenario where you do have a witness testify. I'm sorry. Maybe I wasn't asking the question. So the rule says sufficient guarantees of trustworthiness and Morgan says particularly trustworthy. Is there a lot of daylight between them or are they effectively the same? Is one higher than the other? I think the statute in general requires a high circumstantial guarantees of trustworthiness that that testimony would be reliable to be admitted and when you have a witness in this case who is the girlfriend testifying at the insistence of the plaintiff who one week earlier was accused of or reported to have domestically assaulted her, was beating the crap out of her and the plaintiff herself was faced with a charge in this case of domestic assault. In this incident, there were absolutely no circumstantial guarantees of trustworthiness under these facts. But Morgan, which Judge Perez alluded to, gives several different facts that have to be found in addition to particularly trustworthy, bears on a material fact, obviously she was the only other witness who was not a police officer. It's the most probative evidence addressing that fact and it advances the interest of justice and follows adequate notice. I don't think the district judge went through any of those factors. He just said she's not particularly reliable. Well, based upon the discussion that was said with the court at the conference where all of these various issues were raised that cast serious doubt on the testimony of this particular witness' testimony. And frankly, what was her testimony probative of? Isn't it also true that 807 really is designed to capture situations that are not otherwise addressed by the federal rules? Where you have a rule such as here the predecessor interest rule, a whole bunch of rules relating to when unavailable witness testimony can and cannot be admitted, it would be inappropriate, would it not, to in effect overcome all those specific rules by resort to a general rule like 807? Absolutely, Your Honor, and I would agree. And that's why the courts hold that 807 is to be used rarely and only in exceptional circumstances that certainly aren't present in this case. Thank you so much. Thank you, Your Honors. Mr. Mendel, you have two minutes. With Your Honor's indulgence, I'd like to address the circumstantial guarantees of trustworthiness that were addressed by Defendant's Counsel. Defendant's Counsel refers to a 911 tape and says that because of the 911 tape, we have beat the crap out of Defendant. That is not true. That's not what the tape says. That's why it was excluded. The 911 tape, which can be seen at Appellee's Appendix at 1, says that a man is beating up a woman. It doesn't name or contain any reference to visual characteristic or other markers that would denote Ms. Benjamin or Mr. Askew. And it's at odds with the testimony that Ms. Benjamin gave one week after the fact. I don't recall. Did the District Attorney ask her about her prior, whether she had been previously involved in any physical arguments with the Defendant? She testified that she had never. Never? Yes, never had any physical altercations with the Defendant. And I want to address Rule 807 briefly. It may be that Rule 807 is the catch-all that applies when other rules of evidence that are more specific don't quite fit, but it has been used to admit former testimony. For instance, in Annunziata, the case decided by Judge Shinlin on which the Magistrate Judge, Judge Davison, relied expressly in this case. And one reason for that is that former testimony is unique. This Court in United States v. Bahadur has characterized it as the strongest hearsay, because cross-examination, oath, the solemnity of the occasion, and in the case of transcribed testimony, as we have here, the accuracy of the reproduction of the words spoken all combine to give former testimony a high degree of credibility. Gee, I'm sure glad the witnesses who regularly appear before me always tell the truth because of the oath and the solemnity of the situation. And so why do we need cross-examination at all? Well, Your Honor, I appreciate that. In this case, there was extensive cross-examination to test. It was vigorous, wasn't it? Yes, I would agree. While there were no objections noted, questions were asked and answered two, three, four times in certain circumstances, and Ms. Benjamin was consistent in her testimony, and her testimony was entirely consistent with that of the plaintiff. Mr. Askew, we believe that this was anything but a harmless error. It was one that took this case to the jury in a form that dramatically altered the record and allowed defendants to give self-serving testimony not supported by the charging documents, not supported by the contemporaneous record, and at the same time, the testimony of the other eyewitnesses, that distended testimony is what led to a verdict that, frankly, is at odds with the eyewitness testimony at the time. Unless there are any further questions, Your Honors, I will rest on our briefs in this case. We appreciate it. Thank you so much. Thank you.